IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:21-cr-00026 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| DAVID ALAN CHEATWOOD | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant David Alan Cheatwood's motion to suppress "the evidence found after he [Cheatwood] was seized and the vehicle was searched." (Motion at 6, Dkt. No. 26.) While the motion does not specify the evidence it seeks to suppress, other than "the evidence that he was in possession of a firearm," the court will assume that Cheatwood seeks to suppress all the evidence detailed in the reports attached to the memorandum in opposition filed by the United States,[1] in addition to the firearm and the ammunition with which it was loaded. (*Id*. at 4.) Because the motion merely supposes and speculates and the record contains lawful bases for both Cheatwood's seizure on an outstanding felony warrant for manufacturing methamphetamine and the search of the vehicle that he was driving, the court does not find that a hearing is necessary. For the reasons stated below, the court will deny Cheatwood's motion.

I. BACKGROUND

Just after noon on July 13, 2020, Detective Ryan Finney of the Roanoke County Police Department was traveling on Interstate 581 when he observed a car in the right lane driving below the speed limit. (Incident Report 12, Gov't.'s Ex. A, Dkt. No. 29-1.) The car was being driven by a white male, who Det. Finney recognized to be David Cheatwood from Cheatwood's

---

[1] These items include baggies, a vial, and a glassine pouch containing powdery substances later analyzed to contain fentanyl, heroin, and methamphetamine; digital scales; syringes; SIM cards, a vial of Naloxone, and metal spoons. (Incident Report, Gov't.'s Ex. A, Dkt. No. 29-1.)

"several previous encounters" with law enforcement. (*Id.*) At that point, Det. Finney ran Cheatwood through the Virginia Criminal Information Network (VCIN) system and was notified that Cheatwood had an active felony warrant for manufacturing methamphetamine in a nearby county. (*Id.*)

Det. Finney followed the car as it exited the interstate but did not attempt a traffic stop "[d]ue to [Finney's] car not having any lights or sirens." (*Id.*) He observed Cheatwood stop at the Sonic Drive Inn on Franklin Road, where Cheatwood picked up a passenger, later confirmed to be Steve Parrack. (*Id.*; *see also* Dispatch Log 5, Gov't.'s Ex. C., Dkt. No. 29-3.) Cheatwood and Parrack then drove a short distance and parked at a nearby restaurant, Taste of Asia. (Incident Report 12; Dispatch Log 4.) By that time, Det. Finney had been in contact with fellow Officer Laura Reinhard, informing her about Cheatwood and his outstanding warrant. (Incident Report 8.)

Officer Reinhard arrived on the scene and approached Cheatwood and Parrack in the parked car. (*Id.*) In the passenger seat, Parrack was "holding up a syringe." (*Id.*) When Officer Reinhard knocked on the window and asked to see Parrack's hands, he lowered the syringe and placed his hand out of view. (*Id.*) Officer Reinhard ordered Parrack out of the car. (Dash Cam 1:20, Gov't.'s Ex. B, Dkt. No. 29-2.) She noticed an orange syringe cap in Parrack's lap. (Incident Report 8.) Officer Reinhard asked Parrack, "What was in that needle?" (Dash Cam 1:34.) Parrack responded that it was a "water shot" that he was taking because he was sick. (Dash Cam 1:37.) While Officer Reinhard was searching Parrack and at approximately 12:25 p.m., Det. Finney can be heard stating "he's [Cheatwood's] the one with papers out of Botetourt…manufacturing meth, selling meth." (Dash Cam 2:10–2:30.)

Officer Campbell had arrived on scene and ordered Cheatwood out of the car. (Incident Report 8.) After being notified that Cheatwood was the suspect with the active warrant, Officer Campbell placed Cheatwood in handcuffs, searched him, and placed him in the back of a police car. (*Id.*) Meanwhile, Officer Reinhard searched Parrack and found "cash folded into separate amounts." (*Id.*) Parrack stated that it was recently his birthday and he had just been paid. (Dash Cam 2:40–3:10.) Later, Parrack said he worked at a grocery store and was paid via direct deposit. (Dash Cam 5:10, 5:50.) The officers proceeded to search the car and found, inter alia, a loaded firearm and several baggies containing white and brown powdery substances and crystal and wax-like substances. (Incident Report 8.)

On August 12, 2020, a grand jury returned a one-count indictment against Cheatwood for possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year. (Indictment, Dkt. No. 3.) The indictment also includes a notice of forfeiture for the firearm and "all ammunition, magazines, and accessories." (*Id.*)

## II. DISCUSSION

In his motion to suppress, Cheatwood essentially concedes that, "if the court credits the story of the officers," then they knew there was a warrant for Cheatwood when they approached and arrested him, so the seizure was proper. He then speculates that they did not know of Cheatwood's identity or the warrant until after Cheatwood's seizure and that the officers made up their story "post hoc." He then argues that, regardless of the legality of Cheatwood's seizure, the officers did not have a legal basis to search the car. This is followed by an assertion that "[a]lthough officers observed a passenger with a hypodermic needle, the passenger quickly told police that it was a "water shot," negating or minimizing any probable cause they might have to believe the vehicle would contain evidence of criminal activity." (Motion at 1.) The court will

assume that Cheatwood asserts negation of probable cause and not minimalization of probable cause given that any probable cause, whether minimal or overwhelming, would be sufficient to support the search of the vehicle.

The United States responded in opposition, arguing that both the seizure and search were legal and asking the court to deny the motion to suppress without a hearing. (Gov't.'s Mem. in Opp'n to Mot. to Suppress, Dkt. No. 29.) Attached to the government's response is detailed information contained in incident reports, dispatch logs, and a dash cam video. With that detailed information, the government argues that the evidence shows that one officer recognized Cheatwood, knew Cheatwood had an outstanding warrant, and told the other officers about it before they seized him. It further argues that the automobile exception to the warrant requirement applies to the search of the vehicle and that the officers had probable cause to believe that the vehicle contained contraband. Finally, the government states that no hearing is necessary.

**A. An Evidentiary Hearing Is Not Required On Cheatwood's Motion To Suppress**

On a motion to suppress, "a hearing is required only if the motion…is sufficiently definite, specific, detailed, and non-conjectural to enable a district court to conclude that contested issues of fact going to the validity of the search [or seizure] are in question.[2] *United States v. Griffin*, 811 F. App'x 815, 816 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1106 (2021) (internal quotations omitted). The decision whether to hold a hearing is within the discretion of the court. Here, Cheatwood has not gone beyond speculation to establish definite, specific facts that would require a hearing. *See, e.g., United States v. Foster*, 287 F. Supp. 2d 527, 529 (D. Del. 2003) (burden on defendant to establish hearing necessity). The court has reviewed the

---

[2] Cheatwood's suggestion that a hearing is required merely because counsel does not have independent knowledge of facts or because the officers have never been questioned under oath is not the applicable standard and would require a hearing on almost every motion to suppress. (Motion at 3 n.1.)

materials in the record, including the incident report, Officer Reinhard's dash cam video, and the dispatch logs. The record does not establish contested issues that require a hearing.

**B. Cheatwood Was Lawfully Seized Pursuant To The Outstanding Felony Warrant.**

The Fourth Amendment prohibits unreasonable searches and seizures. The Supreme Court has explained that "[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 579 U.S. 232, 240 (2016) (quoting *United States v. Leon*, 468 U.S. 897, 902 n.21 (1984)). The existence of a valid, outstanding arrest warrant satisfies the probable cause requirement to arrest a person. *See, e.g., Sweet v. Reese*, No. CV62100046HMHJDA, 2021 WL 3931893, at *5 (D.S.C. Sept. 2, 2021).

As Cheatwood acknowledges, if the police "acted in accord with their story…then [Cheatwood] would not have a claim that they acted unreasonably when they seized him." Cheatwood urges the court not to credit the officers account because he believes the dispatch logs conflict with Det. Finney's account in the incident report. However, the dash cam video, which Cheatwood ignores in his motion, clearly confirms that Det. Finney knew of the warrant for Cheatwood and told the other officers about it.

Cheatwood argues it is not clear that Det. Finney recognized Cheatwood from prior encounters with law enforcement, ran his name through VCIN, and found that Cheatwood had an outstanding arrest warrant. Rather, based on the dispatch log, Cheatwood speculates that the encounter originated because police received a call about a suspicious vehicle on Franklin Road. Cheatwood argues this "barebones tip" did not provide a basis for seizing Cheatwood and his passenger, forcing the officers to "manufacture" a narrative post hoc.

5

First, the dispatch log is entirely consistent with the officers account of the incident. The initial dispatch log entry beginning at "12:16:45 PM" shows no data in the "caller name" or "caller phone" fields and describes the call type as "suspicious." There is no caller name because, as the government explains, the report was a law-enforcement-initiated report. The dispatch log indicates that law enforcement was on the scene at El Torro restaurant on Franklin Road at the same time the call was received. The location is then updated to the Sonic Drive Inn on Franklin Road and then Taste of Asia restaurant.

Finally, and most importantly, the dispositive question regarding the seizure is whether the officers knew of Cheatwood's outstanding warrant in Botetourt County when they seized him. The dash cam video establishes that Det. Finney knew of the warrant and tells the other officers on the scene – all consistent with the narratives in the incident report. At approximately 12:25 p.m., Det. Finney can be heard in the dash cam video stating that "he's the one with papers out of Botetourt…manufacturing meth, selling meth." (Dash Cam 2:10–2:30.) This comment is made within two minutes of Officer Reinhard approaching the vehicle and nine minutes prior to the "confirmation" of the warrant, at 12:34 p.m., in the dispatch log.[3] This comment makes clear that the officers knew of the outstanding warrant and legally seized Cheatwood pursuant to that warrant. Cheatwood's seizure was lawful under the Fourth Amendment.

## C. The Search Of The Vehicle Was Lawful

"As a general rule, warrantless searches or seizures are per se unreasonable." *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010). A warrantless search may be justified by one of a "few specifically established and well-delineated exceptions." *Id.* One such exception is to the "automobile exception," *Maryland v. Dyson*, 527 U.S. 465, 467 (1999), which allows

---

[3] Consistent with this evidence, the government explains that "confirmation of a warrant from another district is different from notification that a warrant exists."

officers to search a vehicle without a warrant when they have probable cause to believe the vehicle contains contraband. *Id.*

Cheatwood argues that the fact that the passenger looked like he was going to inject himself with a syringe, while it might be indicative of illegal drug use, is consistent with innocuous activity when the passenger told the police officer that it was a water shot. However, this was not all the information possessed by the officers at the time, and the information they possessed gave them probable cause to search the vehicle.

Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "The task…is simply to make a practical, common-sense decision whether, given all the circumstances…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. The vehicle initially caught Det. Finney's attention by driving under the speed limit on I-581. The officers were aware that Cheatwood had an outstanding warrant for manufacturing methamphetamine. Officer Reinhard saw Parrack holding up a syringe only to move it out of sight with his hand when Reinhard knocked on the car window, even though he had been instructed to show her his hands.[4] Parrack also had approximately $630 in cash on his person folded in separate amounts and in a different pocket than his wallet. Moreover, Parrack explained the cash by noting that he had just been paid, but then he admitted that he was paid by direct deposit. These factors are sufficient to

---

[4] As the government notes, in Virginia, it is unlawful to possess a hypodermic syringe "adapted for the administration of controlled dangerous substances by hypodermic injections under circumstances that reasonably indicate an intention to use [the syringe] for purposes of illegally administering any controlled drug." *See* Va. Code Ann. § 54.1-3466.

determine that the officers had probable cause to search the car for evidence of criminal activity.[5]

### III. CONCLUSION

Finding that a hearing on this motion is unnecessary, the court concludes that the officers lawfully seized Cheatwood and had probable cause to search the car he was driving, which ultimately led to the discovery of a firearm, ammunition, and other evidence. For the reasons stated above, it is HEREBY ORDERED that Cheatwood's motion to suppress (Dkt. No. 26) is DENIED.

Entered: April 5, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[5] Because the court finds that the officers had probable cause to search the car, there is no need to reach the government's argument that the inevitable discovery rule applies because the officers would have inevitably conducted an inventory search.